1
2
3          UNITED STATES DISTRICT COURT
4          EASTERN DISTRICT OF CALIFORNIA
5
6

7   CATALINA ROBLES, et al,            )     CIV-F-06-0288 AWI SMS
                                        )
8                 Plaintiffs,           )     ORDER RE: MOTION TO DISMISS
                                        )
9        v.                             )
                                        )
10  SUNVIEW VINEYARDS OF                )
    CALIFORNIA, INC.,                   )
11                                      )
                  Defendant.            )
12  _____     )

13

14              **I. History**

15      Plaintiffs are seasonal farm laborers who worked for Defendant Sunview Vineyards of

16  California Inc. from roughly 2002 through 2006.  They worked various jobs in the packing shed,

17  cold storage areas, and fields in Kern and Tulare Counties.  Plaintiffs allege that Defendant

18  underpaid them (and other workers like them) and violated a variety of laws that governed

19  working conditions.

20      Plaintiffs filed a class action suit on March 15, 2006. Doc. 1.  The complaint alleges: (1)

21  violations of the federal Migrant and Seasonal Agricultural Workers Protection Act, 29 U.S.C.

22  §1801 et seq. ("AWPA") through failure to pay wages when due, failing to post required notices,

23  failing to keep accurate records, providing false and misleading information, and violating the

24  terms of the working arrangements; (2) common law breach of contract for failure to pay wages

25  for all hours worked; (3) violations Cal. Labor Code §1194 by failing to pay overtime wages; (4)

26  violations of Cal. Labor Code §2802 by requiring Plaintiffs to purchase their own tools; (5)

27  violations of Cal. Labor Code §226.7 by failing to allow meal breaks; (6) violations of Cal. Labor

28  Code §226.7 by failing to allow rest breaks; (7) violations of Cal. Labor Code §226 by failing to

provide accurate work records; (8) violations of Cal. Labor Code §203 by failing to pay wages in a timely manner at the end of the employment relationship; and (9) violations of Cal. Bus. & Prof. Code §17200.  Federal jurisdiction is founded upon 28 U.S.C. §1331 (federal question AWPA claims) and 28 U.S.C. §1367 (supplemental jurisdiction for state claims).  This case is related to several other civil cases in the Eastern District involving similar subject matter including: John Doe, er. al. v. D.M. Camp & Sons, et. al, 05-1417; Santos Valenzuela, et. al. v. Giumarra Vineyards Corp., 05-1600; and Arnaldo Lara, et. al. v. Rogelio Casimiro, et. al., 06-0028.  In this case, Defendant has made a motion to dismiss, asking the court to decline supplemental jurisdiction. Docs. 15 and 16.

## II. Legal Standards

In considering a motion to dismiss under Rule 12(b)(6), the court must accept as true the allegations of the complaint in question. Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976).  The court will construe the pleading in the light most favorable to the party opposing the motion and resolve all doubts in the pleader's favor. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).  A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that plaintiff can prove no set of facts in support of the claim that would entitle him to relief. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984), citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Palmer v. Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981).  Absent unusual circumstances, dismissal without leave to amend is improper unless it is clear that the complaint could not be saved by amendment. Chang v. Chen, 80 F.3d 1293, 1296 (9th Cir. 1996).

When a defendant challenges the legal sufficiency of a complaint, the court's review is limited to the complaint. Cervantes v. City of San Diego, 5 F.3d 1273, 1274 (9th Cir. 1993).  As a general matter, a district court may not consider any material outside of the pleadings when ruling on a Rule 12(b)(6) motion. Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994).  Material properly submitted as part of the complaint and materials the court may take judicial notice of may be considered. Lee v. City of

2

1    Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001).  If the parties present the court with any other

2    evidence and the court considers it, the court must converting the Rule 12(b)(6) motion into a

3    motion for summary judgment. Fed. R. Civ. Pro. 12(b)(6); Anderson v. Angelone, 86 F.3d 932,

4    934-35 (9th Cir. 1996).

5

6                                            **III. Discussion**

7            Plaintiffs' first claim arises out of alleged violations of AWPA. Doc. 1, Complaint, at

8    10:11-25.  Under AWPA, "Any person aggrieved by a violation of this Act or any regulation

9    under this Act by a farm labor contractor, agricultural employer, agricultural association, or other

10   person may file suit in any district court of the United States having jurisdiction of the parties..."

11   29 U.S.C. §1854(a).  Plaintiffs argue that they may sue for recovery of state law violations

12   through AWPA since the legislation has effectively incorporated those causes of action.

13   Defendant asks the court to decline supplemental jurisdiction over the state law claims as

14   Defendant argues they are not incorporated into AWPA. Doc. 16, Defendant's Brief, at 5:24-25.

15   The arguments concerning AWPA are varied.

16           AWPA includes several provisions detailing how an employer must treat an employee.  In

17   relevant part, AWPA mandates that "Each farm labor contractor, agricultural employer, and

18   agricultural association which employs any [migrant or seasonal] agricultural worker shall pay

19   the wages owed to such worker when due.....No farm labor contractor, agricultural employer, or

20   agricultural association shall, without justification, violate the terms of any working arrangement

21   made by that contractor, employer, or association with any [migrant or seasonal] agricultural

22   worker." 29 U.S.C. §1822; 29 U.S.C. §1832.  The law leaves the terms "wages" and "working

23   arrangement" ambiguous.  It is well accepted that AWPA is remedial in nature and must be

24   construed broadly to effect its humanitarian purpose. Barajas v. Bermudez, 43 F.3d 1251, 1260

25   (9th Cir. 1994); Caro-Galvan v. Curtis Richardson, Inc., 993 F.2d 1500, 1505 (11th Cir. 1993);

26   Bracamontes v. Weyerhaeuser Co., 840 F.2d 271, 276 (5th Cir. 1988).  To determine what

27   constitutes the core federal case, the court must decide to what extent these terms allow Plaintiffs

28   to sue under AWPA for violations of California regulations.

**A. Wages**

The case most on point in determining the definition of "wages" comes from the Northern District: Medrano v. D'Arrigo Bros. Co., 125 F. Supp. 2d 1163 (N.D. Cal. 2000).  In Medrano, the plaintiffs sought relief under both AWPA and a number of state statutes.  The plaintiffs alleged that defendant forced them to ride a specific bus to and from the work site, forbidding them from driving directly there.  Under California law, workers must be compensated for such compulsory travel time.  Morillion v. Royal Packing Co., 22 Cal. 4th 575, 587 (Cal. 2000) (decision already handed down by time Medrano was decided).  The plaintiffs argued the failure to pay workers for that travel time in accordance with state law was a violation of AWPA.  The defendants, in their motion to dismiss, forwarded a narrower interpretation of AWPA, implicitly "add[ing] limiting words to Section 1832(a), reading it to say that payment of wages is required only when wages are due according to federal wage and hour laws."  Medrano v. D'Arrigo Bros. Co., 125 F. Supp. 2d 1163, 1166 (N.D. Cal. 2000).  Framing the analysis, the court stated: "AWPA does not define or otherwise explain which substantive rights define the 'wages owed' under Section 1832(a). That is, the Act does not address whether an employer's violation of provisions of state law or the parties' agreement is equivalent to a failure to pay wages. There are no reported cases which have addressed this precise issue. This Court thus must decide as a matter of first impression whether [defendant] may be held liable under AWPA for violations of state wage and hour laws."  Medrano v. D'Arrigo Bros. Co., 125 F. Supp. 2d 1163, 1166 (N.D. Cal. 2000).

Ultimately, the court found in favor of the plaintiffs, reasoning that "Section 1832(a) does not make specific reference to federal or state law, and the Act certainly does not indicate that an employer's obligation to pay may arise only from the AWPA itself. Moreover, while there are no reported cases which have addressed explicitly whether Section 1832(a) incorporates state law, a number of courts have suggested implicitly that it does."  Medrano v. D'Arrigo Bros. Co., 125 F. Supp. 2d 1163, 1167 (N.D. Cal. 2000), citing Antunez v. G & C Farms, Inc., CIV-92-0308 HB, 1993 U.S. Dist. LEXIS 21353, at *31-32 (D.N.M., Aug. 9, 1993) ("New Mexico law requires employers to contribute to an unemployment insurance fund. The failure of an employer to make

1    these payments, when required, constitutes a violation of AWPA's requirement that wages be

2    paid when due"); <u>Fields v. Luther</u>, Civil No. JH-84-1875, 1988 U.S. Dist. LEXIS 5405, at *48-49

3    (D. Md., May 4, 1988) ("Federal and Maryland law require employers to contribute to an

4    unemployment insurance fund. The failure of an employer to make these payments, when

5    required, constitutes a violation of the AWPA's requirement  that wages be paid when due").

6    The court specifically rejected the argument "that because there is an explicit reference to federal

7    and state laws in the housing and transportation sections of AWPA, (see, e.g. 29 U.S.C. §1823),

8    the absence of such a reference in Section 1932(a) must mean that Congress did not intend to

9    incorporate state law into Section 1832(a)....Under such reasoning Section 1832(a) could not

10   incorporate *any* substantive law outside the Act itself. However, as [defendant] acknowledges,

11   Section 1832(a) does incorporate other federal laws." <u>Medrano v. D'Arrigo Bros. Co.</u>, 125 F.

12   Supp. 2d 1163, 1167-8 (N.D. Cal. 2000).

13          While the court has not found any case law that directly states Sections 1822(a) and

14   1832(a) require employers to pay workers wages prescribed by state regulation, the logic of

15   existing case law compels that result.  A recent bench trial in the Eastern District of California

16   found Section 1822(a) violations which implied, but did not specify that it was partially based on

17   failure to pay the state minimum wage; the findings of fact stated "Aside from one initial

18   payment, Plaintiffs were not paid for the farm labor services they performed....[defendant] failed

19   to remit required deductions and employer contributions for unemployment insurance, disability,

20   social security, and federal unemployment insurance....Unpaid wages owed to Plaintiffs,

21   calculated with reference to the $ 5.75 per hour California minimum wage." <u>Velasquez v. Khan</u>,

22   2005 U.S. Dist. LEXIS 34681, *4-6 (ED. Cal. 2005).

23          Wages may be defined by federal, state, and local laws.  Failure by an employer to pay

24   those wages constitute violations of AWPA.

25

26   **B. Working Arrangements**

27          Defining "working arrangement" is much less clear cut.  "No farm labor contractor,

28   agricultural employer, or agricultural association shall, without justification, violate the terms of

5

1   any working arrangement made by that contractor, employer, or association with any [migrant or

2   seasonal] agricultural worker." 29 U.S.C. §1822(c); 29 U.S.C. §1832(c).  Plaintiffs state

3   "Plaintiffs' 'work arrangements' with Defendant necessarily and indisputably required Defendant

4   to comply with California law." Doc. 27, Plaintiffs' Supplemental Brief, at 9:26-28.  That is,

5   Plaintiffs claim  working arrangements necessarily include all statutes governing employment

6   conditions.  Defendant argues "No court has suggested, implied or held that the AWPA provides

7   a remedy for every violation of state labor laws or incorporates every provision of California's

8   Labor Code or Wage Orders, in relation to agricultural workers." Doc. 30, Defendant's

9   Supplemental Brief, at 2:24-27.

10        The Southern District of Texas has said, "The working arrangement, then, is the

11  understandings of the parties, given their mutual knowledge and conduct, as to the expected

12  terms and conditions of employment." Aviles v. Kunkle, 765 F. Supp. 358, 366 (S.D. Tex. 1991),

13  vacated on other grounds.  A law review article has surveyed the case law and concluded that

14  "Most courts that have squarely considered the question of whether the working arrangement

15  provisions can be construed to encompass substantive requirements imposed on employers by

16  separate statutory schemes have answered the question affirmatively. In fact, some courts seem to

17  accept this as such a well-settled point of law that, in holding that employers have violated a

18  working arrangement by engaging in acts that violate other statutory schemes, they engage in no

19  discussion about what actually constitutes a working arrangement under §1822(c) or §1832(c)."

20  Laura Lockhard, *Towards Safer Fields: Using AWPA's Working Arrangement Provisions to*

21  *Enforce Health And Safety Regulations Designed to Protect Farmworkers*, 28 N.Y.U. Rev. L. &

22  Soc. Change 507, 528 (2004).  While the court agrees that several cases that found AWPA

23  working arrangement violations have not actually discussed what constitutes a working

24  arrangement, the court does not find the question nearly as clear cut.  One Ninth Circuit opinion

25  discussing the appropriate statute of limitations for AWPA claims said, "AWPA encompasses

26  requirements relating to information and recordkeeping, worker health and safety, as well as

27  enforcement of contractual working arrangements." Barajas v. Bermudez, 43 F.3d 1251, 1257

28  (9th Cir. 1994).  While not pointing to Sections 1822(c) and 1832(c) specifically, the language

1    implies that working arrangements should be understood as the contract terms between the

2    employer and employee.  Another court has even said that an AWPA working arrangment must

3    be in writing and that oral agreements do not qualify. <u>De Leon-Granados v. Eller & Sons Trees,</u>

4    <u>Inc.</u>, 452 F. Supp. 2d 1282, 1284 (N.D. Ga. 2006).  However, that seems to be a minority view

5    that has not been adopted by other courts.

6         Two district court cases have directly addressed the issue at hand and have come to

7    opposite conclusions.  The Eastern District of Michigan stated, "the term 'working arrangement'

8    includes those aspects of the working relationship that are required by law." <u>Elizondo v.</u>

9    <u>Podgorniak</u>, 100 F. Supp. 2d 459, 463 (E.D. Mich. 2000).  Relying directly on <u>Elizondo</u>, the

10   Northern District of New York has said "For purposes of the pending motion for summary

11   judgment, the Court will assume that federal and state employment related laws are part of the

12   working arrangement between Plaintiffs and Defendants." <u>De La Cruz v. Gill Corn Farms, Inc.</u>,

13   2005 U.S. Dist. LEXIS 44676, *22-23 (N.D.N.Y. 2005).  The Northern District of Ohio, on the

14   other hand, described AWPA in general as "primarily intended to regulate the contractual

15   relationship that exists between farmers, labor contractors and migrant workers. In essence, the

16   AWPA sets out certain provisions that are included, by force of law, in the migrant worker's

17   employment contract." <u>Sanchez v. Overmeyer</u>, 845 F. Supp. 1178, 1179 (N.D. Ohio 1993).

18   However, the court then limited the scope what terms must be included in the statutory

19   employment contract: "In its prior ruling, the Court concluded that the term 'wage' contained in

20   Section 1822(b) [sic] included, by implication, the employer's share of a migrant worker's PICA

21   [sic] tax. Plaintiffs have not provided compelling authority for their contention that a 'working

22   arrangement made' by an employer, as that phrase is used in Section 1822(c), includes the

23   payment of PICA [sic] taxes. This Court is inclined to read Section 1822(c) as relating to express

24   terms of a working arrangement as opposed to those implied by law." <u>Sanchez v. Overmyer</u>, 845

25   F. Supp. 1183, 1187 n.3 (N.D. Ohio 1993).  Thus, while willing to read the term "wage" to

26   include statutory requirements, the court was unwilling to read "working arrangement" as

27   broadly.

28        The language contained in other cases related to this issue are ambiguous.  The Middle

**7**

1    District of Florida found that, "The defendants created a 'working arrangement' within the

2    meaning of 29 U.S.C. 1822(c) and 1832(c) by posting an official Department of Labor poster that

3    notified workers of their right to receive at least $ 4.25 for each hour worked in the workweek,

4    and then, as they concede, violated that working arrangement without justification on at least

5    some occasions by failing to pay the minimum wage." Wales v. Jack M. Berry, Inc., 192 F. Supp.

6    2d 1269, 1287 (M.D. Fla. 1999).  The language appears to presuppose that a working

7    arrangement was not created until the employer communicated to the employee the wage rate

8    even though that rate was mandated by minimum wage laws.  Wales suggests that "working

9    arrangement" does not automatically encompass the full spectrum of employment regulations but

10   only those that are actually communicated between employer and employee.

11          In another case, such a communication between the parties was inferred though there was

12   no direct evidence to that effect.  The magistrate judge who conducted the bench trial factually

13   determined that "[the defendant] did not describe to employees in any detail company policies

14   relating to absenteeism, work beyond the normal 8-hour day and weekend work. It was the

15   defendant's policy, however, not to *require* employees to work on weekends, although they

16   might be requested to do so voluntarily....In fact, the plaintiffs understood that, while they might

17   be required to work beyond the 8-hour period during the week, weekend work was voluntary."

18   Colon v. Casco, Inc., 716 F. Supp. 688, 690 (D. Mass. 1989).  Based on these facts, the District

19   of Massachusetts found: "Appellant does not contest the existence of its 'policy' of voluntary or

20   optional weekend work or the general knowledge of this policy among the workers, including

21   plaintiffs. Instead, it contends that this weekend work policy was never explicitly made a part of

22   the 'working arrangement.' It may be true that there was no written agreement handed over to the

23   workers including this provision. However, given the undisputed mutual knowledge of and

24   reliance upon this policy, it would not be fair or proper in consideration of the goal of protecting

25   seasonal agricultural workers to exclude this understanding from the 'working arrangement.'"

26   Colon v. Casco, Inc., 716 F. Supp. 688, 693-94 (D. Mass. 1989).  Though there may not have

27   been evidence that detailed the precise instance of communication, it appears that the courts

28   inferred that the content of the weekend work policy were transmitted from the employer to the

1    employee, creating a working arrangement.

2           The Fourth Circuit has also issued an opinion which touches on the subject.  The H-2 visa

3    program allows employers to apply to the Department of Labor to hire foreign workers when they

4    demonstrate a labor shortage.  The regulations state that "As part of the temporary labor

5    certification application, the employer shall include assurances, signed by the employer,

6    that....the employer will comply with applicable Federal, State and local employment-related

7    laws, including employment related health and safety laws." 20 C.F.R. § 655.203.  In the case,

8    the employers received federal approval and hired agricultural workers, paying them between

9    $4.49 and $4.70 per hour; the agricultural workers then sued, claiming that the complex federal

10   regulations governing the H-2 visa program mandated a wage of at least $6.00 per hour.

11   Donaldson v. United States Dep't of Labor, 930 F.2d 339, 342 (4th Cir. 1991).  The Fourth

12   Circuit found that, "The amended complaint also sought to allege violations of §§ 1822(c) and

13   1832(c), which require that agricultural employers such as defendants here not 'violate the terms

14   of any working arrangement ...with [migrant and seasonal farmworkers].' The theory of this

15   proposed allegation was that the 'working arrangement' between workers and growers here is the

16   'job offer' made in the clearance process by which, per 20 C.F.R. § 655.203(b), each grower

17   defendant promised to comply with all federal employment related laws, which included, inter

18   alia, the violated DOL regulation governing piece-rate wages payable under the H-2 program."

19   Donaldson v. United States Dep't of Labor, 930 F.2d 339, 350 (4th Cir. 1991).  However, the

20   federal regulations appear to state that the promise to comply with federal employment laws are

21   not given to the employees but rather to the government agencies that review the applications.

22   Another case (not dealing with AWPA) states, "The terms of a job clearance order which reflect

23   DOL requirements become a part of the employment contract as a matter of law. An employer is

24   expressly obligated to make those terms clear to his employees.  The fact that the Growers may

25   have failed to do so, or that for whatever reason the Farmworkers may never have been aware of

26   the job clearance order amendment, in no way minimizes the Growers' contractual obligation in

27   this context." Frederick County Fruit Growers Ass'n v. McLaughlin, 703 F. Supp. 1021, 1031

28   (D.D.C. 1989), citing Salazar-Calderon v. Presidio Valley Farmers Ass'n, 765 F.2d 1334, 1342

1   (5th Cir. 1985).  The District of Maryland outlined the practical relationship between AWPA and

2   these regulations: "The criteria job orders submitted by defendant in its effort to procure H-2

3   workers constituted the working arrangements against which both domestic and H-2 employees

4   were recruited. By its own terms, these job orders claimed to be complete documents listing all

5   material terms involved. The reason for the DOL requirement for such assurances is clear:

6   workers respond to the circulated announcements by travelling to the worksite at their own

7   expense and, in keeping with the humanitarian purpose of AWPA, must be protected from unfair

8   surprises upon arrival." Bernett v. Hepburn Orchards, Inc., 1987 U.S. Dist. LEXIS 16873, *19-20

9   (D. Md. 1987).  The factual background of the Fourth Circuit case is not altogether clear as to

10  whether a copy of the job clearance order was provided to the workers as required.  Other courts

11  have also read the terms of employer initiated visa applications, specifically the promise to

12  comply with employment laws, as comprising part of an AWPA working arrangement. See

13  Perez-Farias v. Global Horizons, Inc., 2007 U.S. Dist. LEXIS 50403, *21-25 (E.D. Wash. 2007);

14  Villalobos v. N.C. Growers' Ass'n, 2001 U.S. Dist. LEXIS 25266, *10-14 (D.P.R. 2001)

15  (magistrate judge's findings and recommendations); Alfred v. Okeelanta Corp., 1990 U.S. Dist.

16  LEXIS 21021, *17-18 (S.D. Fla. 1990); Salazar-Calderon v. Presidio Valley Farmers Ass'n, 765

17  F.2d 1334, 1340-3 (5th Cir. 1985) (dealing with AWPA's predecessor law, the Farm Labor

18  Contractor Registration Act which also included "working arrangement" language).  These cases

19  may be cited for the proposition that all employment related laws are automatically incorporated

20  into an AWPA working arrangement, but it is possible to read them more narrowly.

21        Legislative history offers some limited insight.  The House Committee on Education and

22  Labor issued a report on AWPA which stated, ""Subsection 202(c) provides that a farm labor

23  contractor, agricultural association or agricultural employer shall not, without justification,

24  violate the terms of any working arrangement made by that entity with any migrant agricultural

25  worker. It is the Committee's intention that the duty is owed by the entity that makes the

26  arrangement with the migrant worker and any additional entity which is a joint employer with

27  such entity." H.R. Rep. No. 97-885, at 17 (1982), reprinted in 1982 U.S.C.C.A.N. 4547.  The

28  Senate Committee on Labor and Public Welfare issued a report on the FLCRA which stated, "A

1   certificate of registration may be refused, revoked, or suspended if the farm labor contractor has

2   committed certain specified violations such as...unjustifiably failing to perform working

3   arrangements entered into with farm operators or with migrant workers." S. Rep. No. 88-202, at

4   2, reprinted in 1964 U.S.C.C.A.N. 3690.[1]  The Department of Labor regulations implementing

5   AWPA state: "The Act prohibits farm labor contractors, agricultural employers and agricultural

6   associations from violating, without justification, the terms of any working arrangements they

7   have made with migrant or seasonal agricultural workers." 29 C.F.R. §500.72.  All of these

8   sources essentially echo the language of the statute itself.  Nevertheless, they do emphasize the

9   fact that the substantive terms of working arrangements are made by employers (and other

10  covered entities) with employees.  That is, working arrangements are created in the interaction

11  between those parties.

12      Given the background, this court finds that a working arrangement under AWPA

13  constitutes the terms of employment communicated between employer and employee.  It does not

14  automatically encompass any and all statutes and regulations governing agricultural employment.

15  On the other hand, the communication need not necessarily be verbal or in writing.  As the

16  District of Massachusetts has found, an accepted custom or practice that the employer enforces

17  and the employee follows can also qualify as an implicitly communicated term. See Colon v.

18  Casco, Inc., 716 F. Supp. 688, 690 (D. Mass. 1989).

19

20  **C. State Law Claims**

21      In the Complaint, Plaintiffs allege "Under the working arrangements, which are also oral

22  employment contracts....By words, conduct, practice, or custom and usage, it is understood by the

23  parties that defendants will pay the named plaintiffs and other workers for all work performed,

24  _____

25      [1]The text of the FLCRA states "the Secretary may refuse to issue, and may suspend,
    revoke or refuse to renew a certificate of registration to any farm labor contractor if he finds that
26  such...(3) has failed, without justification, to perform agreements entered into or arrangements
    with farm operators; (4) has failed, without justification, to comply with the terms of any
27  working arrangements he has made with migrant workers." Farm Labor Contractor Registration
    Act of 1963, Pub. L. No. 88-582, 78 Stat. 920.
28

consistent with federal and state law, as follows: a stated hourly wage throughout each season and, during the table grape harvest season, in addition to the stated hourly wage, a stated bonus(incentive) payment based on production in the fields. Said contracts are and were working arrangements...Said contracts required defendants to pay plaintiffs and class members their agreed-upon wages for all hours worked." Doc. 1, Complaint, at 8:23-9:5.  In this case, Plaintiffs have adequately alleged a violation of AWPA with regard to wage claims grounded in state law. The court finds that the reference to "words, conduct, [and] practice" to be especially helpful in clarifying Plaintiffs' AWPA claim.  However, Plaintiffs have not alleged words, conduct, or practice which gives rise to an AWPA working arrangement claim grounded in potential violations of Cal. Labor Code. §2802, and Cal. Bus. & Prof. Code §17200.  Plaintiffs specifically argued that these claims "relate to Defendant's failure to comply with the parties' established work arrangement." Doc. 20, Plaintiffs' Opposition, at 4:25-27.

The court can not make a determination regarding the state claims until there is a firm delineation between those state claims which also form the basis for AWPA claims and those for which no AWPA relief is sought.  The state law issues are complex and some are arguably of first impression; making rulings defining the bounds of state law claims is not a task to be done lightly.  Should Plaintiffs' state law claims not implicate AWPA, the court must then undergo an analysis to determine whether supplemental jurisdiction should be exercised.

## IV. Order

Defendant's motion to dismiss the complaint is GRANTED WITHOUT PREJUDICE. This order makes no substantive ruling regarding the merits of any of Plaintiffs' claims. Plaintiffs are directed to file an amended complaint in conformance with this order within sixty (60) days of the filing of this order.

IT IS SO ORDERED.

Dated:    __March 31, 2008__                    _____/s/ Anthony W. Ishii_____
                                               UNITED STATES DISTRICT JUDGE